IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ROBERT A. JOHNSON, | ] |
| | ] |
| Plaintiff, | ] |
| | ] |
| v. | ] CV-05-2634-KOB |
| | ] |
| BLUE CROSS BLUE SHIELD OF ALABAMA, | ] |
| | ] |
| Defendant. | ] |

**MEMORANDUM OPINION**

This case is before the court on Defendant's Motion for Summary Judgment (Doc. 15). For the reasons discussed below, the court finds that the Defendant has established that no genuine issue of material fact exist, and that it is entitled to judgment as a matter of law. Defendant's motion, therefore, is due to be GRANTED.

**I.    STATEMENT OF FACTS**

The court has reviewed the facts of this case, drawing all justifiable inferences in favor of the nonmovant. Plaintiff Bob Johnson has sued Defendant Blue Cross Blue Shield of Alabama for age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"). Mr. Johnson began working for Blue Cross as a Junior Programmer in approximately 1978. Mr. Johnson was promoted to the position of Senior Systems Analyst in 1989, and later demoted to a Systems Analyst in 1992. Although Blue Cross has put forward evidence regarding Mr. Johnson's erratic behavior from 1992 through 2004, the court will focus on the facts giving rise

to Blue Cross's decision to terminate him in approximately April 2004.

On April 1, 2004, Mr. Johnson's supervisor, Ken McMahan, presented him with a performance evaluation dated March 22, 2004, in which Mr. Johnson received a score of 80 out of 100 points for his performance the preceding year. Mr. Johnson was not pleased with his evaluation, and abruptly ended the meeting with Mr. McMahan by stating "where do I sign" and "I'm done here." Mr. McMahan then verified that his supervisor, Blanche Montgomery, was available to meet, and asked Mr. Johnson to join him in her office.

At that time, Mr. Johnson walked into Ms. Montgomery's office, threw his evaluation on her desk, and declared that the evaluation was "insane." When Ms. Montgomery attempted to assure Mr. Johnson that he had received a good score, he told her to stop repeating herself. Mr. McMahan and Ms. Montgomery perceived Mr. Johnson's conduct during the meeting as sarcastic and disrespectful. Mr. Johnson has disputed that he intended to be sarcastic or disrespectful during the meeting. He has not disputed, however, that he refused to look at Mr. McMahan during the meeting and that he spoke in a loud tone of voice. Mr. McMahan has testified that he was shocked by Mr. Johnson's behavior.

After the meeting, Mr. McMahan told Ms. Montgomery that he was frequently anxious in his dealings with Mr. Johnson because he never knew how Mr. Johnson would react. Mr. McMahan and Ms. Montgomery reported Mr. Johnson's behavior to Blue Cross's Associate Resources department; and Ms. Tina Shaw, Associate Services Manager in that department, conducted an investigation into Mr. Johnson's behavior. During her investigation, Ms. Shaw talked to a number of people who expressed some concern or fear as a result of their interactions with Mr. Johnson. Although Plaintiff disputes the factual basis for some of the comments that

2

other employees made about him, he does not dispute that they told Ms. Shaw various accounts of his erratic behavior. Ms. Shaw did not speak with Mr. Johnson directly during her two-week investigation.

After completing her investigation, Ms. Shaw shared her notes with Rich King, Blue Cross's Senior Vice President of Human Resources. Based on his personal knowledge of Mr. Johnson's employment history and the results of Ms. Shaw's investigation, Mr. King believed that Mr. Johnson's behavioral problems were "significant and ongoing." He recommended to Bill Moon – who, as Blue Cross's Vice President of Systems Resources, was Mr. Johnson's ultimate supervisor – that Mr. Johnson's employment should be terminated because he created a threatening environment for Blue Cross's work force.

Mr. King and Mr. Moon met with Mr. Johnson on the day of his termination, approximately 9 weeks before Mr. Johnson turned fifty-five and would have been eligible to receive an enhanced pension. Mr. King informed Mr. Johnson that he was being terminated because his co-workers were afraid of him, and because of his history of erratic and unnerving behavior. At that meeting, they gave Mr. Johnson a severance package, including lifetime health benefits. Neither Mr. Moon nor Mr. King mentioned Mr. Johnson's age, salary, or pension benefits, although his age and date of birth did appear on the severance package documents.

## II.  STANDARD OF REVIEW

Summary judgment allows a trial court to decide cases where no genuine issues of material fact are present. *See* Fed. R. Civ. P. 56. A court must determine two things: (1) whether any genuine issues of material fact exist; and if not, (2) whether the moving party is

entitled to judgment as a matter of law.  *Id*.

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56).  The movant can meet this burden by offering evidence showing no dispute of material fact, or by showing that the nonmoving party's evidence fails to meet some element of its case on which it bears the ultimate burden of proof.  *Celotex*, 477 U.S. at 322-23.  Once the movant meets this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Id*. at 324 (quoting Fed. R. Civ. P. 56(e)).  The responding party does not need to present evidence in a form admissible at trial; "however, he may not merely rest on [his] pleadings."  *Id*.

In reviewing the evidence submitted, "the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in [its] favor."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  "The nonmovant need not be given the benefit of every inference but only of every reasonable inference."  *Graham v. State Farm Mutual Ins. Co.*, 193 F. 3d 1274, 1282 (11th Cir. 1999).  After both parties have addressed the motion for summary judgment, the court must grant the motion if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  However, the nonmovant can defeat summary judgment by showing either a genuine issue of material fact or that the movant is not

4

entitled to judgment as a matter of law.

**III.   DISCUSSION**

Blue Cross, for the purposes of summary judgment only, concedes that Mr. Johnson has established a *prima facie* case of discrimination based on age, focusing instead on the legitimate, non-discriminatory reasons for his termination. According to Defendant's brief, "Blue Cross terminated Johnson's employment based on an investigation of his disruptive reaction to a Performance Evaluation which led it to believe that his conduct posted a potential threat to the safety of Plaintiff's co-employees." Defendant has also asserted that "Human Resources had researched [Mr. Johnson's] employment history with the company, documented a history of his erratic and unnerving behavior, and determined that it was not going to change, which was why his employment was being terminated." Such rationale constitutes a legitimate, non-discriminatory reason for terminating an employee.

The court finds that Plaintiff has not established a genuine issue of material fact regarding whether Blue Cross's legitimate, non-discriminatory reasons for terminating him were pretextual. Notably, Mr. Johnson does not dispute the essential facts regarding his behavior during the April 2004 meetings regarding his performance evaluations. Instead, he makes a variety of arguments that the reasons Blue Cross has given for his termination are inconsistent, incredible, and that the real reason for his termination was the proximity of his 55th birthday and an alleged age bias held by Mr. McMahan.

First, Mr. Johnson attempts to argue that Blue Cross's proffered reasons lack credibility:

> That employees were afraid of Mr. Johnson certainly is an

>       incredible reason to terminate him.  It is even more difficult to
>       believe that anyone's safety was truly at issue because the
>       defendant waited two (2) weeks after the performance evaluation
>       discussion to terminate Mr. Johnson.[1]

Plaintiff points to evidence that certain employees have stated they were not actually afraid of Mr. Johnson as contradicting Blue Cross's professed reasons for his termination.  The court notes that, simply because certain Blue Cross employees did not personally fear Mr. Johnson does not call into question the decisionmakers' opinion that his erratic, volatile behavior might pose a threat to the general safety of his co-workers.  Plaintiff's argument also fails to account for the fact, which he has not disputed, that he was also terminated because of his history of erratic behavior in general, which Blue Cross determined was not going to change.

Plaintiff further contends that the two-week investigation Ms. Shaw conducted "was merely an attempt to create a record in order to terminate the plaintiff."  He argues that Ms. Shaw did not interview him as a part of the investigation, and that she only collected negative information about him.  Plaintiff, however, has produced no evidence that, prior to the investigation, anyone at Blue Cross had decided to terminate him, prompting the necessity for a "record" on which to base his termination.  In other words, Plaintiff has failed to show that the investigation was a *post hoc* effort to fabricate reasons for his termination.  Rather, the undisputed evidence is that the investigation was a result of his behavior at his performance evaluation; and his termination was a result of the investigation.

Mr. Johnson also argues that the treatment he received at his termination hearing was not the type that would be given if a termination were justified.  Specifically, he notes that he was

---

[1] Pl.'s Opp. Br. at 17.

given a severance package, including lifetime benefits; that Mr. King made a point of telling Mr. Johnson that this package is better than what people normally receive; and that Mr. Moon apologized to Mr. Johnson for terminating him.[2]  Such facts, however, are related to Blue Cross's implementation of Plaintiff's discharge, not to the decision to do so.  This court refuses to intrude into an employer's methods for effectuating an employee's termination, and Plaintiff has not provided any law suggesting that favorable treatment at a termination hearing calls into question an employer's legitimate, non-discriminatory reasons for the adverse employment action.

       Finally, Plaintiff argues that the closeness in proximity of Mr. Johnson's termination to his 55th birthday is further evidence of pretext.  On his 55th birthday, nine weeks after he was terminated, Mr. Johnson would have received a substantial enhancement to his pension – over $140,000.  Plaintiff provides no legal authority directly supporting a claim that temporal proximity of termination to an employee's birthday is evidence of pretext under these circumstances.  The case Plaintiff cites, *Hurlbert v. St. Mary's Health Care*, 429 F. 3d 1286 (11th Cir. 2006), held only that close temporal proximity of protected conduct and an adverse employment decision can create a genuine issue of material fact as to whether the plaintiff was retaliated in violation of the FMLA.  The court has seen no authority supporting the applicability of the close temporal proximity theory in age discrimination cases not involving retaliation.  Additionally, as a logical matter, the court notes that Mr. Johnson's termination is much closer in temporal proximity – two weeks – to his reaction during his performance evaluation than to his 55th birthday.

---

[2] Defendant disputes the characterization of Mr. Moon's comments to Mr. Johnson as an apology.  The court finds the distinction irrelevant because the apology does not provide evidence of pretext.

More importantly, even if the court were to accept the close temporal proximity between Mr. Johnson's termination and his birthday as evidence that Blue Cross terminated him to prevent him from receiving enhanced pension benefits, Blue Cross's decision would not be in violation of the ADEA. Plaintiff is correct that the United States Supreme Court, in *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 613 (1993), expressly reserved ruling on whether an employer who fires an employee whose pension is about to vest because of his age (as distinguished from his years of service) would violate the ADEA. The Eleventh Circuit, however, has interpreted that case to preclude a lawsuit under the ADEA when an employer has made an employment decision on the basis of increased benefits:

> The ADEA does not prohibit an employer from making an employment decision on the basis of higher salaries, increased benefits, pension status, or claims for medical expenses even though these characteristics are often correlated with an employee's age. . . . In sum, the ADEA is not concerned with employment decisions based on an employee's increased use of or eligibility for benefits. Those decisions may violate ERISA, but they do not violate the ADEA.

*Broaddus v. Florida Power Co.*, 145 F.3d 1283, 1287 (11th Cir. 1998) (citing *Hazen Paper*, 507 U.S. at 611). This court acknowledges that the above language was not essential to the Court of Appeals's holding in *Broaddus*, and that the Court of Appeals was merely describing the boundaries between the ERISA claim and the ADEA claim that had gone to trial in the district court. The court, however, finds the distinction instructive in understanding the limits on an ADEA claim.

That the above distinction would apply to preclude the Plaintiff's theory of liability in this case is bolstered in light of the purpose of the ADEA: "[t]he Supreme Court has cautioned that

8

the ADEA prohibits age discrimination and age discrimination alone. . . . Congress enacted the ADEA to combat unproven stereotypes that employers might harbor regarding the decreased abilities of older workers." *Broaddus*, 145 F.3d at 1287 (citing *Hazen Paper*, 507 U.S. at 611, and *EEOC v. Wyoming*, 460 U.S. 226, 231 (1983)).  Plaintiff has only produced limited evidence that his supervisor, Mr. McMahan, may have favored younger employees.  For example, according to Plaintiff, Mr. McMahan stated that "those guys can do anything," referring to younger co-workers, and told Mr. Johnson to watch his back.  Plaintiff also claims that Mr. McMahan was more friendly to the younger employees, routinely joking with them.  Finally, a few months before Mr. Johnson's termination, Mr. McMahan assigned a younger employee to perform work on the computer system that was Mr. Johnson's major work assignment.

      The court questions whether the evidence Plaintiff has provided demonstrates that Mr. McMahan had any age-related prejudice towards Mr. Johnson.  Even assuming Plaintiff has produced sufficient evidence to create an issue of fact as to whether Mr. McMahan exhibited age bias toward Mr. Johnson, such issue would not be material because Plaintiff has essentially admitted that Mr. McMahan did not serve as a decision-maker in Plaintiff's termination.  Although Mr. McMahan, together with Ms. Montgomery, reported Mr. Johnson's erratic behavior to the associate resources department, Plaintiff did not dispute that neither Mr. McMahan nor Ms. Montgomery recommended his termination.  As such, Mr. McMahan's alleged bias could not have had an improper influence on the decision to terminate Mr. Johnson. *See Holifield v. Reno*, 115 F. 3d 1555, 1563-64 (11th Cir. 1997) ("'The biases of one who neither makes nor influences the challenged personnel decision are not probative in an employment discrimination case.'") (quoting *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 10

(1st Cir.1990)).

Despite Plaintiff's various and sundry theories that Defendant's reasons for Mr. Johnson's termination are pretextual, the court is unpersuaded that a genuine issue of material fact exists in this case.

### IV.   CONCLUSION

For the reasons described above, the court finds that Defendant has established that no genuine issue of material fact exists, and that it is entitled to judgment as a matter of law. Specifically, Plaintiff has failed to put forward enough evidence for a reasonable jury to conclude that Defendant's legitimate, non-discriminatory reasons for Plaintiff's termination were pretextual.  Defendant's motion for summary judgment, therefore, is due to be GRANTED.  A separate order will be entered contemporaneously with this opinion.

DATED this 16th day of April, 2007.

*Karon O. Bowdre*
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE